FILED



2019 JUL 31  PM 3:52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2018 Grand Jury

| UNITED STATES OF AMERICA, | No. SACR19-00136 JVS |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. § 846: Conspiracy to Distribute Oxycodone and Acquire a Controlled Substance by Misrepresentation, Fraud, Forgery, Deception, and Subterfuge; 21 U.S.C. §§ 841(a)(1), (b)(1)(C): Distribution of Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B): Distribution of Methamphetamine; 18 U.S.C. § 2(b): Causing an Act to be Done; 21 U.S.C. § 853: Criminal Forfeiture] |
| RAIF WADIE ISKANDER, JOHNNY GILBERT ALVAREZ, aka "MJ," and ADAM ANTON ROGGERO, | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

     1.   Defendant RAIF WADIE ISKANDER was a physician's assistant licensed to practice medicine in the State of California.  Defendant

ISKANDER worked for a medical practice located in Orange County, within the Central District of California.

2. Among defendant ISKANDER's patients was Broker 1, who conspired to commit the crimes described in Count One until Broker 1 began cooperating with law enforcement in approximately February 2019.

B. OBJECTS OF THE CONSPIRACY

3. Beginning on a date unknown to the Grand Jury, and continuing to at least in or around April 18, 2019, in Orange County, within the Central District of California, and elsewhere, defendants ISKANDER, JOHNNY GILBERT ALVAREZ, also known as "MJ," and ADAM ANTON ROGGERO, together with others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally commit the following offenses:

a. Distribution of oxycodone, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C); and

b. Acquiring a controlled substance by misrepresentation, fraud, forgery, deception, and subterfuge, in violation of Title 21, United States Code, Section 843(a)(3).

C. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

4. The objects of the conspiracy were to be accomplished, in substance, as follows:

a. Defendant ISKANDER would act and intend to act outside the usual course of professional practice and without a legitimate medical purpose, by issuing fraudulent prescriptions for oxycodone and other drugs to drug brokers in exchange for cash bribes.

1          b.   Defendant ISKANDER would write the prescriptions by
2    filling in the drug type and pill quantity on the prescription but
3    leaving the patient name blank, so that the drug brokers could fill
4    in the patient name later.

5          c.   Defendant ISKANDER would provide the prescriptions to
6    defendants ALVAREZ and ROGGERO and other drug brokers, knowing that
7    the drugs filled from the prescriptions would be sold to drug
8    customers who were not using the drugs for legitimate medical
9    purposes and whom defendant ISKANDER had never met or examined.

10         d.   Defendants ALVAREZ and ROGGERO and other drug brokers
11   would sell the prescriptions issued by defendant ISKANDER, or the
12   drugs obtained from filling those prescriptions, to drug customers
13   who were not using the drugs for legitimate medical purposes.

14         e.   Defendants ALVAREZ and ROGGERO and other drug brokers
15   would provide to defendant ISKANDER the names and dates of birth of
16   purported patients whose names could be used on the prescriptions.

17         f.   Defendant ISKANDER would check the prescription
18   history of purported patients to see if their names could be used on
19   the prescriptions without attracting scrutiny from the Drug
20   Enforcement Administration.

21         g.   Defendant ISKANDER would receive cash bribes from
22   defendants ALVAREZ and ROGGERO and other drug brokers in exchange for
23   the prescriptions.

24   D.   OVERT ACTS

25        5.   In furtherance of the conspiracy, and to accomplish the
26   objects of the conspiracy, on or about the following dates,
27   defendants ISKANDER, ALVAREZ, and ROGGERO, and others known and
28   unknown to the Grand Jury, committed various overt acts within the

Central District of California, and elsewhere, including, but not limited to, the following:

**October, November, and December 2018 Text Messages by Defendants ISKANDER, ALVAREZ, and ROGGERO**

Overt Act No. 1:   On October 3, 2018, defendant ISKANDER received a text message from Broker 1 stating, in coded language, that defendant ROGGERO wanted two or three prescriptions and would pay for them up front.

Overt Act No. 2:   On October 4, 2018, using coded language in a text message, defendant ALVAREZ told Broker 1 that defendant ALVAREZ needed two prescriptions right away.

Overt Act No. 3:   On October 8, 2018, defendant ALVAREZ received a text message from Broker 1 stating, in coded language, that if defendant ALVAREZ did not provide the money owed to defendant ISKANDER, defendant ISKANDER would refuse to write defendant ALVAREZ any more prescriptions.

Overt Act No. 4:   On November 6, 2018, using coded language in a text message, defendant ISKANDER complained to Broker 1 that one of the drug brokers had filled a prescription at a Rite Aid pharmacy, and that a pharmacy employee at that location then called defendant ISKANDER's office to verify the prescription.

Overt Act No. 5:   On November 7, 2018, using coded language in a text message, defendant ISKANDER told Broker 1 that defendant ISKANDER had not received enough money for the nine prescriptions he had previously given to the unindicted co-conspirator.

Overt Act No. 6:   On November 7, 2018, defendant ISKANDER received a text message from Broker 1 stating, in coded language,

1   that Broker 1 had only sold three of the nine prescriptions

2   previously provided by defendant ISKANDER.

3        Overt Act No. 7:    On November 16, 2018, using coded language

4   in a text message, defendant ISKANDER told Broker 1 to fill

5   prescriptions at Balboa Pharmacy in Newport Beach, California, to

6   ensure that the prescriptions would be filled without arousing

7   suspicion.

8        Overt Act No. 8:    On November 18, 2018, using coded language

9   in a text message, defendant ISKANDER told Broker 1 that defendant

10  ALVAREZ's inability to follow instructions risked exposing the

11  conspiracy.

12       Overt Act No. 9:    On November 18, 2018, defendant ISKANDER

13  received a text message from Broker 1 stating, in coded language,

14  that defendant ROGGERO would purchase two prescriptions the next day.

15       Overt Act No. 10:   On November 21, 2018, using coded language

16  in a text message, defendant ISKANDER told Broker 1 that patient J.P.

17  had no history of being prescribed oxycodone, so defendant ISKANDER

18  could not write a prescription in J.P.'s name without arousing law

19  enforcement suspicion.

20       Overt Act No. 11:   On November 28, 2018, using coded language

21  in a text message, defendant ISKANDER told Broker 1 that it would

22  look suspicious if defendant ISKANDER called a pharmacy to ask

23  whether a patient had filled a prescription purportedly issued by

24  defendant ISKANDER to the patient.

25       Overt Act No. 12:   On November 28, 2018, using coded language

26  in a text message, defendant ISKANDER told Broker 1 that defendant

27  ROGGERO should pay in cash up front if defendant ROGGERO wanted to

28  purchase a prescription from defendant ISKANDER.

1       Overt Act No. 13:   On November 28, 2018, using coded language

2   in a text message, defendant ISKANDER asked Broker 1 what the

3   conspirators should do about defendant ALVAREZ failing to pay his

4   debts owed for prior purchases of prescriptions from defendant

5   ISKANDER.

6       Overt Act No. 14:   On December 14, 2018, defendant ROGGERO

7   received a text message from Broker 1 stating, in coded language,

8   that defendant ISKANDER had agreed to write a prescription for 120

9   oxycodone pills in the name of patient C.L.

10      Overt Act No. 15:   On December 14, 2018, using coded language

11  in a text message, defendant ROGGERO told Broker 1 that defendant

12  ROGGERO wanted to purchase prescriptions in the names of patients

13  C.L. and B.K.

14      Overt Act No. 16:   On December 15, 2018, using coded language

15  in a text message, defendant ROGGERO told Broker 1 that defendant

16  ROGGERO had fentanyl patches available for sale to Broker 1.

17  **December 18, 2018 Sale of Approximately 13.68 Grams of Oxycodone by**

18  **Defendant ALVAREZ**

19      Overt Act No. 17:   On December 14, 2018, using coded language

20  in a text message, defendant ALVAREZ received a text message from

21  Broker 1 stating, in coded language, that defendant ALVAREZ should

22  bring fentanyl patches and cash to pay for prescriptions.

23      Overt Act No. 18:   On December 18, 2018, using coded language

24  in a text message, defendant ALVAREZ told a person he believed to be

25  a customer, but who was in fact an undercover law enforcement officer

26  ("Undercover Customer 1"), that defendant ALVAREZ had oxycodone

27  available for sale.

28

1     Overt Act No. 19:   On December 18, 2018, using coded language
2  in a text message, defendant ALVAREZ told Undercover Customer 1 that
3  defendant ALVAREZ was waiting for a doctor to give him a
4  prescription.

5     Overt Act No. 20:   On December 18, 2018, at a parking lot in
6  Irvine, California, defendant ALVAREZ told Undercover Customer 1 that
7  the doctor charged $1,800 for the prescription, and that defendant
8  ALVAREZ's broker fee was $400.

9     Overt Act No. 21:   On December 18, 2018, defendant ALVAREZ gave
10  Undercover Customer 1 a prescription for 120 pills of oxycodone,
11  which identified defendant ISKANDER as the prescriber and R.A. as the
12  receiving patient.

13     Overt Act No. 22:   On December 18, 2018, defendant ALVAREZ
14  instructed Undercover Customer 1 to follow him to a pharmacy in
15  Newport Beach, California, so that defendant ALVAREZ could fill the
16  prescription.

17     Overt Act No. 23:   On December 18, 2018, in the parking lot of
18  a pharmacy in Newport Beach, California, defendant ALVAREZ gave
19  Undercover Customer 1 a prescription pill bottle containing
20  approximately 13.68 grams of oxycodone.

21     Overt Act No. 24:   On December 18, 2018, using coded language
22  in a text message, defendant ISKANDER received a text message from
23  Broker 1 stating, in coded language, that defendant ALVAREZ wanted to
24  pay ISKANDER $1,500 per prescription until defendant ALVAREZ's debt
25  was repaid.

26  **December 2018 and January 2019 Text Messages by Defendant ROGGERO**
27     Overt Act No. 25:   On December 18, 2018, using coded language
28  in a text message, defendant ROGGERO told Broker 1 that defendant

1  ROGGERO would pick up prescriptions in the names of patients C.L. and
2  B.K. that day.

3      Overt Act No. 26:   On December 21, 2018, using coded language
4  in a text message, defendant ROGGERO provided to Broker 1 the name
5  and date of birth of patient R.R., for use in completing an oxycodone
6  prescription.

7      Overt Act No. 27:   On December 24, 2018, using coded language
8  in a text message, defendant ROGGERO provided to Broker 1 the date of
9  birth of patient C.M., for use in completing an oxycodone
10  prescription.

11      Overt Act No. 28:   On December 27, 2018, using coded language
12  in a text message, defendant ISKANDER told Broker 1 that patient C.M.
13  had not used pain medication recently, and had not used enough to be
14  prescribed a high strength pill without arousing law enforcement
15  suspicion.

16      Overt Act No. 29:   On December 28, 2018, defendant ROGGERO
17  received a text message from Broker 1 stating, in coded language,
18  that defendant ISKANDER had checked the prescription history of
19  patient C.M. and determined that C.M. was not a plausible oxycodone
20  patient.

21      Overt Act No. 30:   On January 3, 2019, using coded language in
22  a text message, defendant ROGGERO told Broker 1 that defendant
23  ROGGERO could supply 30 fentanyl patches for $750 and 60 fentanyl
24  patches for $1300.

25      Overt Act No. 31:   On January 21, 2019, using coded language in
26  a text message, defendant ISKANDER told Broker 1 that January 27,
27  2019 was the earliest that prescriptions issued in the names of
28  defendant ALVAREZ's parents could be filled.

1    Overt Act No. 32:   On January 30, 2019, using coded language in
2    a text message, defendant ISKANDER instructed Broker 1 to deposit
3    money in his Wells Fargo Bank account as payment for oxycodone
4    prescriptions.

5    Overt Act No. 33:   On February 16, 2019, using coded language
6    in a text message, defendant ROGGERO told Broker 1 that defendant
7    ROGGERO needed a prescription for at least 50 oxycodone pills.

8    Overt Act No. 34:   On February 19, 2019, using coded language
9    in a text message, defendant ROGGERO told Broker 1 to put the
10   oxycodone prescription in the name of patient C.L.

11   **February 23, 2019 Sale of Six Oxycodone Prescriptions by Defendant**
12                                      **ISKANDER**

13   Overt Act No. 35:   On February 23, 2019, at a restaurant in
14   Aliso Viejo, California, defendant ISKANDER accepted a $2,500 cash
15   bribe from Broker 1, who had begun cooperating with law enforcement,
16   in exchange for oxycodone prescriptions Broker 1 had previously
17   purchased from defendant ISKANDER.

18   Overt Act No. 36:   On February 23, 2019, defendant ISKANDER
19   told Broker 1 that defendant ISKANDER would write six new
20   prescriptions for Broker 1.

21   Overt Act No. 37:   On February 23, 2019, defendant ISKANDER
22   told Broker 1 that defendant ISKANDER had lied to a pharmacist who
23   had called to verify an oxycodone prescription that defendant
24   ISKANDER sold defendant ALVAREZ, regarding why defendant ALVAREZ and
25   defendant ALVAREZ's parents were all receiving the same medication.

26   Overt Act No. 38:   On February 23, 2019, at a restaurant in
27   Aliso Viejo, California, defendant ISKANDER gave Broker 1 six

28

prescriptions for 120 oxycodone pills each, signed by defendant
ISKANDER but with the patient names and dates of birth left blank.

**February 27, 2019 Sale of Oxycodone Prescription to Defendant ROGGERO**

Overt Act No. 39:   On February 27, 2019, using coded language
in a text message, defendant ROGGERO told Broker 1 that defendant
ROGGERO had heroin and methamphetamine available for sale.

Overt Act No. 40:   On February 27, 2019, defendant ROGGERO told
Broker 1 to take an oxycodone prescription that defendant ISKANDER
had signed, and to complete the patient information on the
prescription using defendant ROGGERO's name and date of birth.

Overt Act No. 41:   On February 27, 2019, in a parking lot in
Costa Mesa, California, defendant ROGGERO gave Broker 1 approximately
1.95 grams of methamphetamine, approximately 3.93 grams of heroin,
and $760 in cash, in exchange for a prescription signed by defendant
ISKANDER for 120 oxycodone pills.

Overt Act No. 42:   On February 27, 2019, in Newport Beach,
California, defendant ROGGERO possessed in his vehicle a prescription
signed by defendant ISKANDER for 120 oxycodone pills, a
methamphetamine pipe, and a digital scale.

Overt Act No. 43:   On February 27, 2019, in Newport Beach,
California, defendant ROGGERO possessed in his pants pockets
approximately 2.73 grams of alprazolam, approximately 0.373 grams of
methamphetamine, and $140 in cash.

**March 8, 2019 Sale of Approximately 25.1 Grams of Methamphetamine by
Defendant ALVAREZ**

Overt Act No. 44:   On March 8, 2019, using coded language in a
text message, defendant ALVAREZ told a person he believed to be a
customer, but who was in fact an undercover law enforcement officer

1  ("Undercover Customer 2"), that defendant ALVAREZ could provide

2  fentanyl and methamphetamine to Undercover Customer 2.

3     Overt Act No. 45:   On March 8, 2019, defendant ALVAREZ told

4  Undercover Customer 2 that one ounce of methamphetamine would cost

5  $300.

6     Overt Act No. 46:   On March 8, 2019, defendant ALVAREZ told

7  Undercover Customer 2 that he was only selling the methamphetamine as

8  a favor to Broker 1, so that Broker 1 would get defendant ALVAREZ a

9  prescription for oxycodone on a later date.

10     Overt Act No. 47:   On March 8, 2019, in a parking lot in Costa

11  Mesa, California, defendant ALVAREZ gave Undercover Customer 2 a

12  plastic jar containing approximately 25.1 grams of methamphetamine in

13  exchange for $300 in cash.

14     **March 12, 2019 Sale of Approximately 4.31 Grams of Fentanyl by**

15     **Defendant ALVAREZ**

16     Overt Act No. 48:   On March 9, 2019, using coded language in a

17  text message, defendant ALVAREZ asked if Undercover Customer 2 wanted

18  to purchase fentanyl patches.

19     Overt Act No. 49:   On March 12, 2019, defendant ALVAREZ told

20  Undercover Customer 2 that the fentanyl patches were $1,000 for five

21  patches.

22     Overt Act No. 50:   On March 12, 2019, defendant ALVAREZ told

23  Undercover Customer 2 that defendant ALVAREZ could obtain an

24  unlimited amount of oxycodone pills that had been manufactured by

25  defendant ALVAREZ's supplier.

26     Overt Act No. 51:   On March 12, 2019, in a parking lot in Costa

27  Mesa, California, defendant ALVAREZ gave Undercover Customer 2 a tin

28

1    containing approximately 1.56 grams of alprazolam and approximately

2    5.31 grams of carisprodol.

3       Overt Act No. 52:   On March 12, 2019, in a parking lot in Costa

4    Mesa, California, defendant ALVAREZ gave approximately 4.31 grams of

5    fentanyl to Undercover Customer 2 in exchange for $1,000 in cash.

6    **March 18, 2019 Sale of Four Oxycodone Prescriptions by Defendant**

7                                                         **ISKANDER**

8       Overt Act No. 53:   On March 18, 2019, at a restaurant in Aliso

9    Viejo, California, defendant ISKANDER accepted a $2,500 cash bribe

10   from Broker 1 in exchange for the prescriptions provided by defendant

11   ISKANDER on February 23, 2019.

12      Overt Act No. 54:   On March 18, 2019, defendant ISKANDER told

13   Broker 1 that defendant ROGGERO had filled a prescription for 120

14   pills of oxycodone on October 23, 2018 and another prescription for

15   90 pills of oxycodone on October 24, 2018.

16      Overt Act No. 55:   On March 18, 2019, defendant ISKANDER told

17   Broker 1 that defendant ISKANDER had only given Broker 1

18   prescriptions for 120 or 150 pills of oxycodone, never for 90 pills.

19      Overt Act No. 56:   On March 18, 2019, defendant ISKANDER asked

20   Broker 1 if Broker 1 was writing defendant ROGGERO's name on the

21   prescriptions provided to defendant ROGGERO.

22      Overt Act No. 57:   On March 18, 2019, defendant ISKANDER told

23   Broker 1 that defendant ISKANDER only trusted defendant ALVAREZ,

24   because the prescriptions for defendant ALVAREZ were written in

25   defendant ALVAREZ's parents' names.

26      Overt Act No. 58:   On March 18, 2019, at a restaurant in Aliso

27   Viejo, California, defendant ISKANDER gave Broker 1 four paper

28

1  prescriptions for 120 oxycodone pills each, signed by defendant

2  ISKANDER but with the patient names and dates of birth left blank.

3  **April 9, 2019 Sale of Approximately 11.98 Grams of Fentanyl by**

4  **Defendant ALVAREZ**

5  Overt Act No. 59:  On March 26, 2019, using coded language in a

6  text message, defendant ALVAREZ told Undercover Customer 2 that

7  defendant ALVAREZ could supply 100 fentanyl pills for $1,700 or

8  $1,800.

9  Overt Act No. 60:  On April 9, 2019, at a parking lot in Costa

10  Mesa, California, defendant ALVAREZ gave Undercover Customer 2 a

11  bottle containing approximately 11.98 grams of fentanyl in exchange

12  for $2,000 in cash.

13  **April 10, 2019 Sale of Approximately 425.2 Grams of Methamphetamine**

14  **by Defendant ALVAREZ**

15  Overt Act No. 61:  On April 9, 2019, using coded language in a

16  text message, defendant ALVAREZ asked if Undercover Customer 2 had

17  prescriptions for defendant ALVAREZ.

18  Overt Act No. 62:  On April 9, 2019, using coded language in a

19  text message, defendant ALVAREZ told Undercover Customer 2 that

20  defendant ALVAREZ could supply one and a half pounds of

21  methamphetamine for $3,000.

22  Overt Act No. 63:  On April 10, 2019, in a parking lot in Santa

23  Ana, California, defendant ALVAREZ told Undercover Customer 2 that

24  his supplier could provide one and a quarter pounds of

25  methamphetamine for $3,000, and that defendant ALVAREZ wanted

26  Undercover Customer 2 to help him get a prescription later.

27  Overt Act No. 64:  On April 10, 2019, in a parking lot in Costa

28  Mesa, California, defendant ALVAREZ gave a vacuum-sealed bag

containing approximately 211.1 grams of methamphetamine to Undercover Customer 2.

Overt Act No. 65:   On April 10, 2019, in a parking lot in Costa Mesa, California, defendant ALVAREZ gave a bag containing approximately 214.1 grams of methamphetamine to Undercover Customer 2.

Overt Act No. 66:   On April 10, 2019, in a parking lot in Costa Mesa, California, defendant ALVAREZ accepted $2,500 in cash from Undercover Customer 2 for both bags of methamphetamine.

1

2                              COUNT TWO

3                   [21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

4                          [DEFENDANT ALVAREZ]

5          On or about December 18, 2018, in Orange County, within the

6    Central District of California, defendant JOHNNY GILBERT ALVAREZ,

7    also known as "MJ," knowingly and intentionally distributed

8    oxycodone, a Schedule II narcotic drug controlled substance.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

[DEFENDANT ISKANDER]

On or about February 23, 2019, in Orange County, within the Central District of California, defendant RAIF WADIE ISKANDER, then a licensed physician's assistant in the State of California, while acting and intending to act outside the usual course of professional practice and without a legitimate medical purpose, knowingly and intentionally distributed, and willfully caused the intentional distribution of, approximately 720 pills containing oxycodone, a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT ROGGERO]

On or about February 27, 2019, in Orange County, within the Central District of California, defendant ADAM ANTON ROGGERO knowingly and intentionally distributed methamphetamine, a Schedule II controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT ROGGERO]

On or about February 27, 2019, in Orange County, within the Central District of California, defendant ADAM ANTON ROGGERO knowingly and intentionally distributed heroin, a Schedule I narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)]

[DEFENDANT ALVAREZ]

On or about March 8, 2019, in Orange County, within the Central District of California, defendant JOHNNY GILBERT ALVAREZ, also known as "MJ," knowingly and intentionally distributed at least five grams, that is, approximately 25.1 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT ALVAREZ]

On or about March 12, 2019, in Orange County, within the Central District of California, defendant JOHNNY GILBERT ALVAREZ, also known as "MJ," knowingly and intentionally distributed fentanyl, a Schedule II narcotic drug controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

[DEFENDANT ISKANDER]

On or about March 18, 2019, in Orange County, within the Central District of California, defendant RAIF WADIE ISKANDER, then a licensed physician's assistant in the State of California, while acting and intending to act outside the usual course of professional practice and without a legitimate medical purpose, knowingly and intentionally distributed, and willfully caused the intentional distribution of, approximately 480 pills containing oxycodone, a Schedule II narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT ALVAREZ]

On or about April 9, 2019, in Orange County, within the Central District of California, defendant JOHNNY GILBERT ALVAREZ, also known as "MJ," knowingly and intentionally distributed fentanyl, a Schedule II narcotic drug controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)]

[DEFENDANT ALVAREZ]

On or about April 10, 2019, in Orange County, within the Central District of California, defendant JOHNNY GILBERT ALVAREZ, also known as "MJ," knowingly and intentionally distributed at least 50 grams, that is, approximately 211.1 grams, of methamphetamine, a Schedule II controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)]

[DEFENDANT ALVAREZ]

On or about April 10, 2019, in Orange County, within the Central District of California, defendant JOHNNY GILBERT ALVAREZ, also known as "MJ," knowingly and intentionally distributed at least 50 grams, that is, approximately 214.1 grams, of methamphetamine, a Schedule II controlled substance.

FORFEITURE ALLEGATION

[21 U.S.C. § 853]

[ALL DEFENDANTS]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Eleven of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)    All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold

1  to, or deposited with a third party; (c) has been placed beyond the

2  jurisdiction of the court; (d) has been substantially diminished in

3  value; or (e) has been commingled with other property that cannot be

4  divided without difficulty.

                                              A TRUE BILL


                                              _____
                                              Foreperson

NICOLA T. HANNA
United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

VIBHAV MITTAL
Assistant United States Attorney
Deputy Chief, Santa Ana Branch
Office

ROSALIND WANG
Assistant United States Attorney
Santa Ana Branch Office